UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSE MORALES, et al.,

      Plaintiffs,

  v.

DERRICKS CONCRETE LLC, et al.,

      Defendants.

Case No. 1:25-cv-69

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

The four Plaintiffs performed concrete finishing services for Defendants Derrick Koller and Thomas Wiggins at thirteen different construction job sites between June and October in 2022. Plaintiffs have yet to be paid for any of that work. So they sued. But Koller and Wiggins never appeared to defend themselves. Plaintiffs successfully sought an entry of default from the Clerk's Office and now move the Court for entry of default judgment. For the reasons below, the Court **GRANTS IN PART** Plaintiffs' Motion for Default Judgment (Doc. 19) in the amount of $74,525.52.

# BACKGROUND[1]

Plaintiffs Jose Morales, Julio Hernandez, Crecenciano Hernandez Diaz, and Heriberto Morales Helguera were each employees of Defendants Derrick Koller and Thomas Wiggins' companies, Derricks Concrete LLC, and Ark Construction Services LLC, between June 5, 2022, and October 6, 2022. (Am. Compl., Doc. 2, #15). In connection with their employment, they provided concrete finishing services on various residential and commercial construction projects, including at least thirteen different job sites. (*Id.* at #17). Plaintiffs agreed to perform these services in exchange for promises of varying per-job payments by Defendants. (*Id.*). For starters, Defendants agreed to pay each Plaintiff a "minimum daily rate of at least $150." (*Id.*). For jobs of less than 1,000 square feet, "Defendants agreed to pay Plaintiffs, as a group, a total of at least $1,200 per job." (*Id.*). And, "[f]or jobs greater than 1000 square feet, Defendants promised to pay Plaintiffs as a group at least $2.50/square [foot]." (*Id.*). Finally, for "one job site requiring over 8,500 square feet of concrete finishing," Defendants promised Plaintiffs in the aggregate approximately $21,250. (*Id.*).

In performing these jobs, (*see id.* (listing the various job sites)), Plaintiffs each worked approximately 190 hours, comprised of "in excess of 60 hours for Derricks

---

[1] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *See In re Cook*, 342 B.R. 384, 2006 WL 908600, at *3 (B.A.P. 6th Cir. Apr. 3, 2006) (Table). Accordingly, the Court's summary of the factual background rests on the allegations in Plaintiffs' Amended Complaint. (Doc. 2).

Concrete LLC" and "in excess of 130 hours for Defendant Ark Construction Services LLC." (*Id.* at #17–18). Plaintiffs have not been paid for any of this work. (*Id.*).

Seeking their lost wages, Plaintiffs brought this suit on February 7, 2025. (Compl., Doc. 1). They initially sued four defendants, the two companies they worked for, Derricks Concrete LLC, and Ark Construction Services LLC, and the two individuals owning those companies—Derrick Koller and Thomas Wiggins. (*Id.*). On March 20, 2025, Plaintiffs filed an Amended Complaint, condensing the existing defendants by suing Koller and Wiggins both individually and doing business as (d/b/a) their companies, (Doc. 2, #1), and adding WigGuer LTD., d/b/a Groundworx Solutions as a third defendant. Plaintiffs allege that WigGuer LTD. is an alter ego of Thomas Wiggins and Ark Construction Services formed *after* the events set forth in the complaint occurred for the purpose of avoiding liability. (*Id.* at #16). Plaintiffs assert five claims based on the unpaid wages: (1) non-payment of wages under the FLSA, Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; (2) Ohio minimum wage violations under Ohio Revised Code § 4111 and Ohio Constitution art. II, § 34a; (3) late payment of wages under Ohio Revised Code § 4113.15; (4) breach of contract; and (5) quantum meruit/unjust enrichment. (Doc. 2, #18–22).

Defendants Koller and Wiggins, despite each being validly served (*see* Doc. 7; Doc. 10), never answered or responded to Plaintiffs' complaints, nor did an attorney appear on their behalf. Defendant WigGuer LTD., by contrast, has participated in the case, filing an Answer (Doc. 14) and holding a Rule 26(f) conference with Plaintiffs, (*see* Doc. 17).

Given the lack of response from Defendants, on May 23, 2025, Plaintiffs applied for entry of default against Derrick Koller, Derricks Concrete LLC, Thomas Wiggins, and Ark Construction Services LLC.[2] (Doc. 13). The Clerk entered default against those four defendants on May 28, 2025. (Doc. 15). Then, on August 18, 2025, Plaintiffs moved for default judgment against Derrick Koller, individually and d/b/a Derricks Concrete LLC (Koller), and Thomas Wiggins, individually and d/b/a Ark Construction Services LLC (Wiggins). (Doc. 19). They seek an assessment of $78,720.24 in monetary damages and interest, which represents $19,680.06 per Plaintiff. (*Id.* at #78). With that, the matter is ripe.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021); *see also* Fed. R. Civ. P. 8(b)(6). Next, unless the claim "is for a sum certain or a sum that can be made certain by

---

[2] Although Plaintiffs had condensed these four entities down to two in their Amended Complaint, (Doc. 2), they asked the Clerk of Court to enter default against all four, (Doc. 13). The Clerk did so, despite two of those Defendants having already been terminated from the docket. (Doc. 15). Plaintiffs' Motion for Default Judgment, however, was brought against the two correct Defendants. (Doc. 19).

4

computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (Table). ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Said differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (quotation omitted).

Assuming there is jurisdiction and a plausible claim, a court then "must conduct an inquiry" to establish the appropriate damages. *Beaver*, 2021 WL 1084610, at *2 (cleaned up). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up).

5

## LAW AND ANALYSIS

To begin, the Court concludes that Plaintiffs have satisfied Federal Rule of Civil Procedure 55(a)'s requirement for a default. Koller and Wiggins failed to plead or otherwise defend this action despite Plaintiffs serving Koller on April 8, 2025, (Doc. 7), and Wiggins on April 9, 2025, (Doc. 10). Plaintiffs' claim, though, is not for a sum certain, so the Court must determine whether they are entitled to default judgment under Rule 55(b)(2). Ultimately, while Plaintiffs fail to state a claim under the FLSA, they are entitled to default judgment on their Ohio law and Breach of Contract claims.

**A.   The Court Has Jurisdiction Over This Matter.**

Plaintiffs have no trouble establishing jurisdiction. Start with subject-matter jurisdiction. Plaintiffs assert a claim under the FLSA—a federal law. The Court therefore has federal question jurisdiction over that claim, *see* 28 U.S.C. § 1331, and will exercise supplemental jurisdiction over the additional state-law claims, 28 U.S.C. § 1367(a).[3] The Amended Complaint's now-admitted factual allegations also demonstrate personal jurisdiction. *Harbold v. Smash Restro & Bar, LLC*, No.

---

[3] Although the Court ultimately concludes that Plaintiffs failed to plausibly allege their FLSA claim, the federal claims were not so frivolous as to deprive the Court of its subject-matter jurisdiction. To the contrary, Plaintiffs merely failed to plausibly allege FLSA coverage. And because this Opinion and Order does not dismiss Plaintiffs' FLSA claim and is instead determining damages, the Court retains jurisdiction over the state-law claims (which are based on the same conduct as the federal claims) under 28 U.S.C. § 1367(a). And even if the federal claim were to be dismissed, this Court may still retain jurisdiction at its discretion. *See Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412–13 (6th Cir. 1991) (explaining that district courts have "discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed" if the interests of judicial economy outweigh the benefits of allowing an Ohio court to decide the state-law claim (cleaned up)).

6

5:22-cv-1583, 2023 WL 4085309, at *2 (N.D. Ohio June 20, 2023) ("Once default is entered, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments."). Derricks Concrete LLC and Ark Construction Services LLC were both formed and have their principal places of business in Ohio. *See* Ohio Sec'y of State, Business Search, https://perma.cc/5284-XTV6 (Derricks Concrete LLC); https://perma.cc/6EHH-XSRP (Ark Construction Services LLC). (Doc. 2, #15). Thus, they are "at home" in Ohio and subject to this Court's personal jurisdiction. *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 768 (N.D. Ohio 2019) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). And while the Plaintiffs do not state whether Koller and Wiggins are themselves residents of Ohio, personal jurisdiction exists because they were both served in Ohio, (Docs. 7, 10). *See Wright v. Stryker Corp.*, No. 2:19-cv-2877, 2020 WL 1290245, at *4 (S.D. Ohio Mar. 18, 2020) (citing *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610–11 (1990)).

**B.  Plaintiffs Plausibly Alleged That Defendants Are Liable, but Only Under Ohio Wage Laws and for Breach of Contract.**

Having established that the requisite jurisdiction exists, the Court next considers whether Plaintiffs have stated a claim for relief against Defendants. As noted above, Plaintiffs assert five claims based on the unpaid wages: (1) non-payment of wages under the FLSA, Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.; (2) Ohio minimum wage violations under Ohio Revised Code § 4111 and Ohio Constitution art. II, § 34a; (3) late payment of wages under Ohio Revised Code

7

§ 4113.15; (4) breach of contract; and (5) quantum meruit/unjust enrichment. (Doc. 2, #18–22). The Court evaluates each below.

### 1. Plaintiffs Failed to Plausibly Allege FLSA Coverage.

The FLSA requires employers to pay non-exempt employees a set minimum wage. 29 U.S.C. § 206(a). And it requires employers to pay employees at least one-and-a-half times their regular pay for overtime hours—that is, for any hours beyond forty per week. *Id.* § 207(a)(1). But only *covered* employees may bring FLSA claims. *Dep't of Lab. v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 682 (S.D. Ohio 2025). Coverage can arise in one of two ways—individual coverage or enterprise coverage. *Id.*; *see also* 29 U.S.C. §§ 203(s)(1), 207(a)(1).

Before turning to coverage, the Court notes that Plaintiffs allege that Defendants employed them to work "on construction projects." (Doc. 2, #15). The Court is satisfied that Koller and Wiggins are employers, and that Plaintiffs are employees as the FLSA defines those terms. *See* 29 U.S.C. § 203(d), (e)(1). But whether Plaintiffs have established they are *covered* employees requires closer attention. The Amended Complaint does not directly discuss coverage. However, under a generous reading, there are two statements that might suggest coverage. First, that each Plaintiff worked "for Defendants on several construction projects in Ohio and Kentucky," i.e. across state lines—possibly supporting individual coverage. (Doc. 2, #17–18). Second, a statement that "[e]ach Defendant, at all relevant times, was an 'enterprise engaged in commerce or in production of goods for commerce.'" (Doc. 2, #16 (citing 29 U.S.C. § 203(s)(1))).

8

Let's start with the individual coverage. For an employee to be subject to individual coverage they must be themselves "engaged in commerce or in the production of goods for commerce, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Walsh v. Americare Healthcare Servs., Inc.*, No. 2:21-cv-5076, 2023 WL 2544509, at *4 (S.D. Ohio Mar. 16, 2023) (citing 29 U.S.C. § 207(a)(1). Typically, employees "engaged in interstate or foreign commerce include employees in distributing industries … and employees who regularly travel across State lines." *Warren v. Sitto*, No. 16-10507, 2017 WL 2951626, at *2 (E.D. Mich. Apr. 21, 2017) (citing 29 C.F.R. § 779.103, the Department of Labor's interpretation of the FLSA). Here, Plaintiffs do plead that they worked on construction projects in "Ohio and Kentucky," suggesting travel across state lines. (Doc. 2, #17–18). But Plaintiffs do not allege any facts in support of this, as all the listed job sites where Plaintiffs worked for Defendants are in Ohio. (Doc. 2, #17).[4] This, combined with Plaintiffs' failure to even discuss individual coverage in the operative complaint, leads this Court to find that it does not apply. Until Plaintiffs plead facts that allows this Court to plausibly conclude that plaintiffs regularly travelled across state lines as part of their employment, Plaintiffs are not individually covered under the FLSA. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1316 (11th Cir. 2011) (finding that a home restoration and repair employee was not individually covered

---

[4] The Court notes that while the Amended Complaint does not list any Kentucky jobsites, Plaintiffs' affidavits attached to their Motion for Default Judgment state that the "Lone Tree Properties" jobsite was in Kentucky. (Docs. 19-1, #96; Doc. 19-2, #101). The Motion itself lists an Ohio address, a discrepancy discussed below. Even assuming one jobsite was in Kentucky, the Court finds this to be insufficient to establish regular work travel across state lines.

9

under the FLSA "because [he] did not travel across state lines as part of his work for [his employer]").

The Plaintiffs fare no better at alleging enterprise coverage. Enterprise coverage exists when an employee works for an enterprise (1) that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and (2) "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)–(ii). The enterprise's work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Walsh*, 2023 WL 2544509, at *4 (quotation omitted). "Any regular contact with commerce, no matter how small, will result in coverage." *Id.* (cleaned up).

Plaintiffs do not plausibly allege either element. As to the first, the Amended Complaint does not allege that Plaintiffs handled goods or materials that have moved in interstate commerce, stating only that they provided "concrete finishing services." (Doc. 2, #17). While it is conceivable that Plaintiffs may have used supplies or tools that originated out of state, it is not in the Amended Complaint. So, this Court cannot reasonably infer that the first element is present. Even more damning, Plaintiffs' allegations say nothing about the second element: volume of sales or business done. Plaintiffs do not allege that Defendants have $500,000 or more worth of annual business—let alone any facts that would allow the Court to infer it. Thus, Plaintiffs'

10

allegation that "[e]ach Defendant, at all relevant times, was an 'enterprise engaged in commerce or in the production of goods for commerce' as that phrase is defined under 29 U.S.C. § 203(s)(1)," (*id.* at #16), is nothing more than a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Because Plaintiffs do not properly allege individual or enterprise coverage, this Court does not grant default judgment as to their FLSA claim.

### 2. Plaintiffs Plausibly Alleged Violations of Ohio Law.

Plaintiffs' claims meet with more success under Ohio wage laws. While these provisions adopt FLSA definitions, they do not have the same coverage requirement. Plaintiffs bring both a claim for violation of Ohio's minimum wage laws—citing Ohio Constitution Article II, § 34a and Ohio Revised Code § 4111—and a claim for violation of Ohio Revised Code § 4113.15 (Ohio's Prompt Pay Act).

Turning to the first of those, the Ohio Constitution requires every employer to pay its employees a minimum wage, while adopting the FLSA's definitions of "employer" and "employee." Ohio Const. art. II, § 34a. The Plaintiffs were employees of the Defendants. *See supra* Part B.1. And Plaintiffs claim that they each worked 190 total hours for Defendants while receiving no payment. (Doc. 2, #17–18). Thus, Plaintiffs plausibly allege that Defendants failed to pay them wages in violation of the Ohio Constitution's fair minimum wage provision. *See* Ohio Const. art. II, § 34a (explaining that there is no "pleading [requirement] beyond those that apply generally to civil suits").

However, once again because they failed to plead any volume of gross receipts, Plaintiffs are only entitled to the *federal* minimum wage. Under the Ohio Constitution, "employers whose annual gross receipts are $394,000 or less (as adjusted for inflation) may pay their employees the wage rate that the FLSA sets (i.e., federal minimum wage) rather than paying state minimum wage." *Tucker v. Ron Hall's Famous Final Cleaning Co.*, No. 1:24-cv-215, 2025 WL 1248366, at *4 (S.D. Ohio Apr. 30, 2025) (citing Ohio Const. art. II, § 34a and *State Minimum Wage Laws*, U.S. Dep't of Lab. (last updated Jan. 1, 2025), https://perma.cc/V5S8-4TAB). Thus, Plaintiffs have only plausibly alleged entitlement to the federal minimum wage of $7.25 per hour. *Minimum Wage*, U.S. Dep't of Lab., https://perma.cc/WVL8-8DBE.

Plaintiffs have also plausibly alleged that Defendants are liable under Ohio Revised Code § 4113.15. That statute holds an employer liable for an additional six percent of the unpaid wages if the employer fails to pay an employee his or her wages for thirty days or more beyond the regularly scheduled payday, or—as is the case here—where no regularly scheduled payday is applicable, for sixty days beyond when wages became payable or when a claim was filed. Ohio Rev. Code § 4113.15(B). While Plaintiffs do not allege a "regularly scheduled payday," or when they were supposed to be paid, at the very least it has been more than sixty days since they filed the present lawsuit. So Plaintiffs have sufficiently stated this claim.

### 3. Plaintiffs Plausibly Alleged Breach of Contract and Unjust Enrichment.

Plaintiffs also assert claims for both breach of contract and unjust enrichment[5] against all defendants. (Doc. 2, #22–23). Such claims are governed by Ohio law. Plaintiffs successfully pleaded both claims. However, because "[u]nder Ohio law, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject," the Court only enters default judgment as to the breach of contract claim. *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (citing *Wuliger v. Mfrs. Life Ins. Co. (USA)*, 567 F.3d 787, 799 (6th Cir. 2009)).

To successfully establish a breach of contract claim, Plaintiffs are "required to allege the following: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages." *Byers DiPaola Castle, LLC v. Portage Cnty. Comm'rs.*, 41 N.E.3d 89, 94 (Ohio Ct. App. 2015). Plaintiffs' allegations, which the Defendants are considered to have admitted, plausibly establish these elements. A contract exists, as Defendants agreed to pay Plaintiffs in exchange for providing concrete finishing services for various rates. (Doc. 2, #17). Plaintiffs performed the contract by doing said work "on at least 13 job sites," and Defendants breached the

---

[5] Plaintiffs call this claim for relief "*Quantum Meruit – Unjust Enrichment Against Defendants.*" (Doc. 2, #22). However, in Ohio, while "the elements of quantum meruit and unjust enrichment have been found to be identical," they are distinct claims. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 59 N.E.3d 758, 770 (Ohio Ct. App. 2016). "The difference is the manner in which damages are computed." *Id.* In unjust enrichment actions, damages are based on the benefit to the defendant, while in quantum meruit actions, damages are based on the value of the plaintiff's services. *Id.* (quotation omitted). Here, because no damages are being awarded on this claim, the Court does not need to guess which of the two the Plaintiffs seek.

contract by not paying them for it. (*Id.* at #17–18). And Plaintiffs allege that they were each damaged to the tune of "approximately $15,000," plus interest, by this breach. (*Id.* at #22).

And "[t]o state a claim for unjust enrichment in Ohio, Plaintiffs must plausibly allege that (1) they conferred a benefit on the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." *Duff v. Centene Corp.*, 565 F. Supp. 3d. 1004, 1028 (S.D. Ohio 2021) (citing *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (1984)). Similar to the breach of contract claim, these elements are easily established. Plaintiffs conferred a benefit to Defendants by performing concrete finishing services at various job sites, (Doc. 2, #17), the Defendants had knowledge of this work, being paid for it by the property owners, (*id.* at #23), and Defendants unjustly retained that benefit by withholding payment to Plaintiffs. However, because Plaintiffs' work was governed by a contract with Defendants, the Court declines to enter default judgment on the unjust enrichment claim.

### C. Plaintiffs Are Entitled to Damages.

Plaintiffs assert that Defendants' minimum wage violations entitle each of them to approximately $2,083.20 in unpaid regular and overtime wages and $4,166.40 in liquidated damages.[6] (Doc. 19, #90–91). Plaintiffs also assert that they

---

[6] Plaintiffs based these calculations on the rates awarded under Ohio Revised Code § 4111.14 and Ohio Constitution § 2.34, as those provisions provided for larger damages than the FLSA.

are each entitled to $14,809.38 for their breach of contract claim, plus both $888.56 in interest under Ohio Revised Code § 4113.15 and $3,992.12 in prejudgment interest. (*Id.* at #91–92). However, Plaintiffs do not ask the Court to "duplicat[e] damages under both theories of recovery," instead only including the breach of contract damages in their assessment (plus interest) because that "amount eclipses the minimum wage rates."[7] (*Id.* at #90). Accordingly, Plaintiffs ask for $19,680.06 individually, totaling $78,720.24 collectively.

Plaintiffs Jose Morales and Julio Hernandez, moreover, provided affidavits attesting to each job worked and the individual amounts of promised payments. (Morales Decl., Doc. 19-1; Hernandez Decl., Doc. 19-2). The Court finds this evidence sufficient to calculate damages. However, there is one problem, the affidavits calculate "at least $15,409.37," (Doc. 19-1, #98; Doc. 19-2, #104), in owed wages per plaintiff while the Motion itself calculates and asks for $599.99 less—$14,809.38. (Doc. 19, #89, 91). (The Amended Complaint, for its part, had previously asked for "approximately $15,000." (Doc. 2, #22)). This discrepancy appears to come from an error in the Motion's calculations. In the Motion, Plaintiffs state that the largest job, "Lone Tree Properties," was work done at 723 Newton Dr., citing to the Morales Declaration at ¶ 4. (*Id.* at #88). But both declarations actually state that Lone Tree Properties was at 107 Demand Ct. in Georgetown, Kentucky, and list 723 Newton

---

[7] Because of this, the Court only focuses on the calculation of the breach of contract damages. But the Court does find that Plaintiffs' minimum wage damages calculations are incorrect as they are based on the higher Ohio minimum wage, plus overtime, which Plaintiffs failed to qualify for because they are not covered by the FLSA. *See supra* B.1. The rate is instead $7.25 for each of the 192 hours worked, or $1,392 plus liquidated damages.

15

Dr., Beavercreek, Ohio as a separate job for which Defendants owed each Plaintiff $600. (Doc. 19-1, #96; Doc. 19-2, #101–02). This $600 explains the discrepancy. However, because the Court's award is generally limited by what the parties request, *see* Fed. R. Civ. P. 54(c), the Court will use the lower amount, $14,809.38, for its calculations because it is still supported by the affidavits.

Plaintiffs also ask for two types of interest: (1) 6% interest to be awarded under Ohio Revised Code § 4113.15, and (2) 7.85% prejudgment interest on the total damages (contract damages plus the 6% interest). (Doc. 19, #89–91). As noted above, the Plaintiffs have properly alleged a claim under Ohio Revised Code § 4113.15, which calls for damages of "six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." Ohio Rev. Code § 4113.15(B); *see also Mickens v. Sweet Twist Frozen Yogurt, LLC*, No. 2:20-cv-2244, 2021 WL 2069762, at *2 (S.D. Ohio May 24, 2021). Here, Plaintiffs correctly calculated 6% of $14,809.38 as $888.56, which is greater than $200, so Plaintiffs are each entitled to that amount. (Doc. 19, #91). Plaintiffs also ask for an additional 7.85% of prejudgment interest, compounded annually for the past three years, on the total damages of $15,687.94. (*Id.*). Plaintiffs state that they calculated this rate from the average prime rate from August 1, 2022, to August 1, 2025. (*Id.*). While Plaintiffs cite a case that prejudgment interest is up to the district court's discretion, *Rybarcyzk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000), and an example of an award based on average prime rate, *George v. GTE Directories Corp.*, 114 F. Supp. 2d 1281, 1300 (D.

16

Fla. 2000), they do not provide any authority for why it is warranted in *this* case. (Doc. 19, #91). And based on the Court's own research, this is not the correct rate.

The Court is awarding Plaintiffs damages on state law claims, and "when the district court exercises supplemental jurisdiction over state law claims, as it does in this case, 'the award of prejudgment interest rests on state law.'" *McNeal v. Serene Home Health Servs.*, No. 3:23-cv-13, 2024 WL 4850299, at *7 (S.D. Ohio Nov. 21, 2024) (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 333 (6th Cir. 2007)). So, Ohio law governs whether prejudgment interest is available. To start, neither Ohio Minimum Wage laws nor Ohio Rev. Code § 4113.15 provide for prejudgment interest. *McNeal*, 2024 WL 4850299, at *7. Thus, no interest is available on the $888.56 in damages awarded under the § 4113.15 claim, nor would it be if Plaintiffs' damage were based on the unpaid minimum wage.

But the breach of contract damages are a different story. A court's ability to award prejudgment interest on breach of contract damages is governed by Ohio Revised Code § 1343.03(A). *Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 376–77 (6th Cir. 2006). And under that statute, once there is a favorable breach of contract award, the "plaintiff has a right [] to an interest award as a matter of law, and the trial judge has no discretion not to grant any interest award." *Id.* (quotation omitted). Thus, Plaintiffs are each entitled to prejudgment interest on the $14,809.38 for the breach of contract in accord with § 1343.03(A), which in turn states that the interest rate per annum is determined pursuant to Ohio Revised Code § 5703.47. *See also Annual Certified Interest Rates*, Ohio Dep't of Tax'n,

17

https://perma.cc/6GTR-3VFZ. This rate was 3.0% in 2022, 5.0% in 2023, 8.0% in 2024, and 8.0% in 2025. *Id.* And such interest is generally awarded as simple interest. *See Cliffs Sale Co. v. Am. S.S. Co.*, No. 1:07-cv-485 2008 WL 3852138, at *1 (N.D. Ohio Aug. 18, 2008); *see also Berdyck v. Shinde*, 713 N.E.2d 1098, 1110–11 (Ohio Ct. App. 1998) ("Simple interest is to be used when there is no specific agreement to compound interest or a statutory provision authorizing the compound interest.") (collecting cases). Finally, the Court must determine the appropriate period for which to award interest. Under § 1343.03(A), interest begins to accrue when the money becomes "due and payable," a factual determination subject to the trial court's discretion. *MRC Innovations, Inc. v. Lion Apparel, Inc.*, 152 N.E.3d 513, 526 (Ohio Ct. App. 2020). Because Plaintiffs have not stated when they were due payment, the Court considers October 6, 2022—the day Plaintiffs last worked for Defendants, (Doc. 2, #15; Doc. 19-1, #96)—as the date when their wages became due and awards interest for the subsequent three years, i.e. through October 5, 2025, per the Plaintiffs' request. (Doc. 19, #91). *See also Tharo Sys.*, 196 F. Appx. at 378 ("[M]oney damages become due and payable on a contract at the time of the breach."). Thus, Plaintiffs are entitled to 3% interest for 87 days of 2022, which amounts to 0.715% (i.e., 87/365 * 3%) in interest; 5% interest for all of 2023; 8% interest for all of 2024; and 8% interest for 278 days of 2025, which amounts to 6.093% (i.e., 278/365 * 8%)—or added together, prejudgment interest totaling 19.808% of the damages award. This calculates to an additional award of $2,933.44 in prejudgment interest per Plaintiff. Thus, in aggregate, each Plaintiff is entitled to receive $14,809.38 for breach of contract, $888.56 under Ohio

Rev. Code § 4113.15, and $2,933.44 in accrued interest, for a total of $18,631.38. This translates to an aggregate judgment for the four Plaintiffs of $74,525.52 against Koller and Wiggins.

Finally, Plaintiffs also request leave to file a motion with supporting evidence for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d)(2). (Doc. 19, #92). That request is granted.

## CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** Plaintiffs' Motion for Default Judgment (Doc. 19) and directs the Clerk to **ENTER JUDGMENT** in the amount of $74,525.52. Defendants Derrick Koller, individually and d/b/a Derricks Concrete LLC, and Thomas Wiggins, individually and d/b/a Ark Construction Services LLC, are jointly and severally liable to the Plaintiffs for this amount.

**SO ORDERED.**

October 22, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**